**E-Filed 10/11/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ARLENE VALDEZ, | Case Number C 06-2541 JF (HRL) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE WITH LEAVE TO AMEND |
| v. | |
| DOWNEY SAVINGS AND LOAN ASSOCIATION, et al., | |
| Defendants. | [Doc. Nos. 12 and 18] |

Defendants move to dismiss and to strike portions of Plaintiff's complaint. The Court has considered the briefing submitted by the parties as well as the oral arguments presented at the hearing on October 6, 2006. For the reasons discussed below, the motions will be granted with leave to amend.

## I. BACKGROUND

Plaintiff Arlene Valdez ("Valdez") filed her complaint in this action on April 12, 2006, alleging predatory lending practices by lender Downey Savings and Loan Association ("Downey"), loan broker Primewest Residential Loans, Inc. ("Primewest"), and two Primewest employees, Habibullah Khan ("Khan") and Savindar Kattaura ("Kattaura"). The complaint

alleges the following:

Valdez is an elderly widow living on a fixed monthly income. Complt ¶ 27. In April 2004, she purchased a home located at 198 Dogaway Drive in San Jose, California ("the Dogaway property") with loans underwritten by World Savings Bank FSB ("World Savings"). *Id.* at ¶¶ 28-29. Less than one year later, Valdez began receiving unsolicited telephone calls from a man who stated that his name was "Romeo" and that he was calling on behalf of Primewest to assist Valdez with refinancing her Dogaway property. *Id.* at ¶¶ 30-31. Romeo continued calling for a month, and eventually Valdez confided to him that she had three goals: (1) to install a new patio at the Dogaway property; (2) to transfer title of the Dogaway property to her son; and (3) to establish an escrow/impound account from which real property taxes on the Dogaway property would be paid automatically. *Id.* at ¶ 35. Romeo promised that all of these goals would be accomplished by the proposed refinance, and Valdez agreed to enter into the subject loan. *Id*. at ¶¶ 36-37.

Shortly thereafter, Valdez was contacted by Sean McGivern ("McGivern"), who identified himself as Romeo's co-worker and stated that he would process the refinance loan. *Id.* at ¶ 39. McGivern assured Valdez that the refinance would accomplish her three goals and that the total finance charges would be from $3,000 to $4,000. *Id.* at ¶ 42. Valdez told McGivern that she was on a fixed income of $1,500 per month derived solely from Social Security benefits and her late husband's private pension plan. *Id*. at ¶ 44. McGivern obtained all of Valdez's loan information over the telephone, informed her that she would qualify for the refinance loan, and provided Valdez's information to Khan and Primewest. *Id*. at ¶¶ 45-46.

On April 13, 2005, Romeo, McGivern and another person came to Valdez's home and presented her with a large stack of transactional documents to sign. *Id*. at ¶¶ 49-50. She was not given an opportunity to examine all of the documents thoroughly, including the loan application, and relied on the representations of McGivern and the others as to the documents' contents. *Id*. at ¶ 51. Upon later review, Valdez discovered that she actually was being charged more than $6,000 by Primewest. *Id*. at ¶ 53. On April 19, 2005, she also discovered that despite earlier assurances that there would be no prepayment penalty charge from the World Savings loan, she

1   had in fact incurred a prepayment penalty charge. *Id*. at ¶ 58. Valdez then instructed McGivern

2   to cancel the loan, but he stated that cancellation was impossible. *Id*. at ¶ 59. Valdez telephoned

3   World Savings, which recommended that she ask Primewest to "rewind the loan." *Id*. at ¶ 62.

4   Valdez left McGivern a voice mail asking him to rewind the loan, but he did not return the call.

5   *Id*. at ¶ 63. Valdez also called Downey and asked that the loan be cancelled and/or rewound.

6   Downey refused on the ground that the loan already had closed. *Id*. at ¶¶ 65-66. Valdez

7   continued trying to contact Primewest, and eventually spoke to Khan, who said he would look

8   into the situation. *Id*. at ¶ 68. However, Primewest, Khan and Kattaura failed to cancel or

9   rewind the loan. *Id*. at ¶ 69. According to the final HUD-1, the Downey loan was not funded

10   until April 29, 2005 and thus could have been rewound at the time Valdez requested cancellation.

11   *Id*. at ¶ 71. The final HUD-1 listed a prepayment penalty to World Savings of $7,011.91. *Id*. at ¶

12   72.

13        Valdez subsequently discovered that information on her loan application with respect to

14   her assets, income and employment history was falsified by someone other than herself. *Id*. at ¶

15   73. She also discovered that the closing costs included an origination fee of $6,075 to

16   Primewest. *Id*. at ¶ 75. She learned that Downey had increased the interest rate of her loan in

17   order to finance a kickback payment of $12,150 to Primewest. *Id*. at 78-79. She also learned

18   that Defendants had arranged for her to purchase a title insurance policy in the amount of

19   $445,000, even though the Downey loan totaled only $405,000. *Id*. at 81. The final HUD-1 also

20   showed that Valdez was charged a second time for a $325 appraisal of the property, that there

21   had been a $500 payment to Primewest for "processing," and a payment of a $50 "email fee" to

22   Commonwealth Land Title Company. *Id*. at ¶¶ 82-84. Primewest never arranged for the

23   escrow/impound account that Valdez had requested and never transferred title of the Dogaway

24   property to her son. *Id*. at ¶ 85.

25        Based upon these allegations, Valdez alleges the following claims: (1) violation of the

26   Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (against Downey); (2) violation of the

27   Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (against all

28   Defendants); (3) breach of fiduciary duty (against Primewest, Khan and Kattaura); (4)

1   concealment (against Khan and Kattaura); (5) negligence (against Khan and Kattaura); (6)

2   negligent misrepresentation (against Primewest, Khan and Kattaura); (7) intentional

3   misrepresentation (against Khan and Kattaura); (8) fraud and Cal. Civ. Code § 3294 (against

4   Primewest, Downey, Khan and Kattaura); and (9) violation of California's UCL, Cal. Bus. &

5   Prof. Code § 17200 *et seq.* (against all Defendants).

6       Downey has filed a motion to dismiss or, alternatively for more definite statement, and a

7   motion to strike portions of the complaint.  Primewest, Khan and Kattaura have filed a motion to

8   dismiss or, alternatively to strike portions of the complaint.

9                                **II. LEGAL STANDARD**

10      For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

11  Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

12  *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

13  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

14  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

15  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

16      The Court may strike "from any pleading any insufficient defense or any redundant,

17  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike

18  generally will not be granted unless it is clear that the matter to be stricken could not have any

19  possible bearing on the subject matter of the litigation.  *LeDuc v. Kentucky Central Life*

20  *Insurance Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  Allegations "supplying background or

21  historical material or other matter of an evidentiary nature will not be stricken unless unduly

22  prejudicial to defendant."  *Id*.  Moreover, allegations that contribute to a full understanding of the

23  complaint as a whole need not be stricken.  *Id*.

24                                **III. DISCUSSION**

25  **A.    First Claim For Violation Of TILA**

26      Under TILA, a creditor must provide several distinct disclosures to a borrower.  *See, e.g.,*

27  15 U.S.C. §§ 1635 (disclosure of right to rescind), 1637 (disclosure of annual percentage rate and

28  other information in connection with open end credit plan), 1638 (disclosure of amount financed

                                       4

and other information in connection with transaction other than open end credit plan), 1639 (disclosure of annual percentage rate and other information in connection with certain types of mortgage). A borrower may bring action for violation of any of these disclosure obligations. 15 U.S.C. § 1640.

Valdez alleges that Downey violated TILA by failing to provide Valdez with "all appropriate material disclosures mandated under TILA." Complt. ¶ 88. However, the first claim for relief does not specify which disclosures were not provided, referring generally to "disclosures and notices required under 15 U.S.C. § 1601 *et seq.*" *Id.* at ¶ 89. These allegations do not provide Downey with fair notice as to the nature of Valdez's TILA claim. Accordingly, the motion to dismiss will be granted with leave to amend so that Valdez may allege her TILA claim with more specificity.

Valdez also alleges that she is entitled to recover punitive damages for Downey's TILA violation. Downey moves to strike this allegation on the ground that TILA provides for statutory damages but does not provide for punitive damages. Downey's position is correct. The motion to strike the punitive damages allegation will be granted.

**B.    Second Claim For Violation Of RESPA**

Section 8(a) of RESPA, 12 U.S.C. § 2607(a), provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." A yield spread premium ("YSP") paid by a lender to a broker may constitute an illegal kickback under this section if the YSP was not reasonably related to the services furnished by the broker. *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1014 (9th Cir. 2002).

Valdez alleges that "RESPA prohibits any person from paying or accepting a kickback or excessive or unearned fee," Complt. ¶ 96, and alleges that she ultimately paid a $6,075 origination fee, a $12,150 YSP, a $500 processing fee and a $50 email fee, *id.* at ¶ 101. Valdez also alleges that she was charged for lender title policy coverage of $445,500 when her loan amount was only $405,000. *Id.* at ¶ 105. Valdez appears to be alleging that *all* of these fees

1  resulted in an unlawful kickback or unearned fee under RESPA. *Id.* at ¶ 106. However, she fails

2  to allege *how* the various fees constituted kickbacks or unearned fees.

3      Valdez also alleges that Defendants failed to provide disclosures as required under

4  Section 4,12 U.S.C. § 2603. Section 4 does not provide a private right of action. *See Morrison*

5  *v. Brookstone Mortgage Co., Inc.*, 415 F. Supp. 2d 801, 805-06 (S.D. Ohio 2005). Valdez

6  concedes that Section 4 does not provide a private right of action, but asserts that the alleged

7  Section 4 violation can provide the basis of a § 17200 claim, discussed below.

8      Finally, although the RESPA claim is asserted against all Defendants, Valdez fails to

9  assert a basis for holding Khan and Kattaura individually liable.

10     Downey argues that it is unclear whether the Dogaway property is Valdez's primary

11 residence and that if it is not, Valdez did not have a right to cancel the loan. Downey requests

12 judicial notice of documents showing that Valdez is the owner of other real property. The Court

13 concludes that consideration of this issue would be premature at this time, because Valdez's

14 RESPA claims are not yet clearly alleged. Moreover, the Court is not persuaded that judicial

15 notice of documents showing ownership of other real property is appropriate on a motion to

16 dismiss; at first blush it would seem that this argument properly should be raised in the context of

17 a motion for summary judgment.

18     Accordingly, while it appears that Valdez may well be able to state a viable RESPA

19 claim, the bases of her RESPA claim are not alleged with sufficient particularity to give notice to

20 Defendants as to which of their alleged acts violated which provisions of RESPA.

21 **C.    Third Claim For Breach Of Fiduciary Duty And Fifth Claim For Negligence**

22     Valdez's third claim alleges breach of fiduciary duty against Primewest, Khan and

23 Kattaura, and the fifth claim alleges negligence against Khan and Kattaura. Defendants argue

24 that their duties to Valdez derive exclusively from RESPA, and that as a result Valdez cannot

25 assert common law claims for breach of fiduciary duty and negligence against them. However,

26 the cases cited by Defendants for this proposition are inapposite; the Court concludes that

27 RESPA does not encompass the only duties owed by a broker and that Valdez's common law

28 claims are not preempted. The Court nonetheless will dismiss these claims with leave to amend

6

1   so that Valdez can allege them with more particularity.

2   **D.     Fourth Claim For Concealment, Sixth Claim For Negligent Misrepresentation,**

3   **Seventh Claim For Intentional Misrepresentation And Eighth Claim For Fraud**

4   Defendants argue that Valdez's fraud claims are barred by the statute of frauds.  The

5   statute of frauds, as codified in California Civil Code § 1624, provides that certain types of oral

6   contracts are invalid.  The statute of frauds cannot be raised as a defense to common law fraud

7   claims.  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 801-02 (9th Cir. 1991).

8   Defendants also argue that Valdez's fraud claims are barred by the parol evidence rule

9   because she is, in effect, alleging that she was fraudulently induced into entering the refinance

10  agreement by statements contrary to the contents of those written agreements.  The Court

11  concludes that a determination as to the application of the parol evidence rule would be

12  premature at this stage of the proceedings.

13  The Court agrees with Defendants, however, that Valdez's fraud claims are not pled with

14  adequate specificity as required under Federal Rule of Civil Procedure 9(b), which provides that

15  allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b).  To the extent that

16  Valdez is alleging a false promise, she must plead that Defendants did not intend to perform at

17  the time they made the promise and that the promise was intended to deceive or induce Valdez to

18  enter into the refinance agreement.  *See Tarmann v. State Farm Mutual Automobile Insurance*

19  *Co.*, 2 Cal. App.4th 153, 158 (1991).  Valdez additionally must allege the other elements of fraud

20  with the requisite specificity, for example, as against a corporation, "the names of the persons

21  who made the allegedly fraudulent representations, their authority to speak, to whom they spoke,

22  what they said or wrote, and when it was said or written." *Id.*  at 157.

23  Here, Valdez alleges fraud claims against all Defendants.  However, no representations

24  are alleged with respect to Downey.  There is a general allegation that the other Defendants were

25  agents of Downey, but Valdez provides no specificity or factual support for such agency

26  allegations.  With respect to Primewest, it appears that Valdez's allegations are based upon

27  statements by Romeo, McGivern and Khan, but Valdez does not allege that these individuals had

28  authority to speak for Primewest.  Nor does she allege exactly what was said and when.  With

7

1   respect to Kattaura, it is not clear that Kattaura made any representations at all.

2       Accordingly, the fraud claims will be dismissed with leave to amend.

3   **E.   Ninth Claim For Violation Of § 17200**

4       Downey argues that the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461

5   *et seq.*, preempts Valdez's unfair competition claim. The other Defendants join in this argument.

6   HOLA applies to Federal savings associations and Federal savings banks. While Downey clearly

7   is such an institution, Primewest is not. There does not seem to be any authority that HOLA

8   applies to mortgage brokers. Accordingly, it is not clear that even a valid preemption argument

9   would extend to Primewest and the individual Defendants.

10      With respect to the preemption argument, the law appears to be unsettled. For the

11  reasons stated on the record at the hearing, the Court will defer determination of this issue until

12  Valdez alleges her other claims with sufficient particularity.

13                          **IV. ORDER**

14  (1)   Defendants' motions to dismiss and strike are GRANTED WITH LEAVE TO

15        AMEND.

16  (2)   Any amended complaint shall be filed and served within thirty (30) days of the

17        date of this order.

18

19

20

21

22

23  DATED:  10/11/06

24

25  _____

26  JEREMY FOGEL
    United States District Judge

27

28

8

1    This Order was served on the following persons:

2

3    Eric M. Alderete      ealderete@downeysavings.com, jessicavasquez@downeysavings.com

4    David Paul Bonaccorsi     dbonaccorsi@3blawfirm.com, bonojd@aol.com

5    Alison Paige Buchanan     apb@hogefenton.com

6    Isela Castaneda     isela.castaneda@dlapiper.com, alison.mcquade@dlapiper.com

7    Rajiv Sajjan Dharnidharka     rajiv.dharnidharka@dlapiper.com, christina.wikner@dlapiper.com

8    Moses Diaz     mosesd@lawfoundation.org, moses@ucdavis-alumni.com

9    Christine M. Johnson     cjohnson@downeysavings.com, jessicavasquez@downeysavings.com

10   Michael D. McSweeney     mdm@hogefenton.com

11   Stephanie Sidra Alexandre Stevens     stephanies@lawfoundation.org

12   Aaron Wainscoat     aaron.wainscoat@dlapiper.com, aaron.wainscoat@dlapiper.com;
     celestine.seals@dlapiper.com
13
     Karen Wing Ka Yiu     kyiu@3blawfirm.com
14
     Yakov M. Zolotorev     yakov.zolotorev@dlapiper.com, deborah.brown@dlapiper.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

9