**E-filed 4/17/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ARLENE VALDEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>DOWNEY SAVINGS AND LOAN ASSOCIATION, a California Corporation, PRIMEWEST RESIDENTIAL LOANS, INC., a California Corporation, HABIBULLAH M KAHN, an individual, SAVINDAR K. KATTAURA, an individual, ROMEO DE LA CRUZ, an individual, SEAN MCGIVERN, an individual, et al.,<br><br>  Defendants. | Case Number C 06-2541-JF (HRL)<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF PRIMEWEST, KAHN, AND KATTUARA; AND (2) DENYING MOTION TO DISMISS OF ROMEO AND MCGIVERN<br><br>[Docket. Nos. 43, 48 ] |

**I. BACKGROUND**

Plaintiff Arlene Valdez ("Valdez") filed her initial complaint in this action on April 12, 2006, alleging predatory lending practices on the part of lender Downey Savings and Loan Association ("Downey"), loan broker Primewest Residential Loans, Inc. ("Primewest"), and two Primewest employees, Habibullah Khan ("Khan") and Savindar Kattaura ("Kattaura"). On July 3, 2006, Downey filed a motion for more definite statement. On August 21, 2006, Kattaura,

Primewest, and Khan moved to dismiss or strike the complaint. On October 11, 2006, this Court granted the motions with leave to amend. Valdez filed the operative First Amended Complaint ("FAC") on October 23, 2006, alleging predatory lending practices on the part of Downey, Primewest, Khan, Kattaura, and two additional Primewest employees, Romeo De La Cruz ("Romeo") and Sean McGivern ("McGivern"). Valdez alleges the following:

Valdez is an elderly widow living on a fixed monthly income. FAC ¶ 37. In April 2004, she purchased a home located at 198 Dogaway Drive in San Jose, California ("the Dogaway property") with loans underwritten by World Savings Bank FSB ("World Savings"). *Id.* at ¶¶ 38-39. Less than one year later, Valdez began receiving unsolicited telephone calls from a man who stated that his name was "Romeo" and that he was calling on behalf of Primewest to assist Valdez with refinancing her Dogaway property. *Id.* at ¶¶ 40-41. Romeo continued calling for a month, and eventually Valdez confided to him that she had three goals: (1) to install a new patio at the Dogaway property; (2) to transfer title of the Dogaway property to her son; and (3) to establish an escrow/impound account from which real property taxes on the Dogaway property would be paid automatically. *Id*. at ¶ 45. Romeo promised that all of these goals would be accomplished by the proposed refinancing, and Valdez agreed to enter into the subject loan. *Id*. at ¶¶ 46-47.

Shortly thereafter, Valdez was contacted by McGivern, who identified himself as Romeo's co-worker and stated that he would process the refinance loan. *Id*. at ¶ 49. McGivern assured Valdez that the refinancing would accomplish her three goals and that the total finance charges would be from $3,000 to $4,000. *Id*. at ¶ 52. Valdez told McGivern that she was on a fixed income of $1,500 per month derived solely from Social Security benefits and her late husband's private pension plan. *Id*. at ¶ 54. McGivern obtained all of Valdez's loan information over the telephone, informed her that she would qualify for the refinance loan, and provided Valdez's information to Khan and Primewest. *Id*. at ¶¶ 55-56.

On April 13, 2005, Romeo, McGivern and another person came to Valdez's home and presented Valdez with a large stack of transactional documents to sign. *Id*. at ¶¶ 59-60. Valdez was not given an opportunity to examine all of the documents thoroughly, including the loan

2

application, and she relied on the representations of McGivern and the others as to the documents' contents. *Id*. at ¶ 51. She then signed the paperwork as instructed. *Id.* Upon later review, Valdez discovered that she actually was being charged more than $6,000 by Primewest. *Id*. at ¶ 63. On April 19, 2005, Valdez also discovered that despite earlier assurances that there would be no prepayment penalty charge from the World Savings loan, she had in fact incurred a prepayment penalty charge. *Id*. at ¶ 68. Valdez then instructed McGivern to cancel the loan, but he stated that cancellation was impossible. *Id*. at ¶ 69. Valdez telephoned World Savings, which recommended that she ask Primewest to "rewind the loan." *Id*. at ¶ 72. Valdez left McGivern a voice mail asking him to rewind the loan, but he did not return the call. *Id*. at ¶ 73. Valdez also called Downey and asked that the loan be cancelled and/or rewound. Downey refused on the ground that the loan already had closed. *Id*. at ¶¶ 75-76. Valdez continued her efforts to contact Primewest, and she eventually spoke to Khan, who said he would look into the situation. *Id*. at ¶ 77-78. However, Downey, Primewest, Khan, Kattaura, and McGivern failed to cancel or rewind the loan. *Id*. at ¶ 79. According to the final HUD-1, the Downey loan was not funded until April 29, 2005 and thus could have been rewound at the time Valdez requested cancellation. *Id*. at ¶ 81. The final HUD-1 listed a prepayment penalty to World Savings of $7,011.91. *Id*. at ¶ 82.

      Valdez subsequently discovered that information on her loan application with respect to her assets, income and employment history was falsified by someone other than herself. *Id*. at ¶ 83. She also discovered that the closing costs included an origination fee of $6,075 to Primewest. *Id*. at ¶ 85. She learned that Downey had increased the interest rate of her loan in order to finance a kickback payment of $12,150 to Primewest and/or Kattaura and Khan. *Id*. at ¶ 86. She also learned that Defendants had arranged for her to purchase a title insurance policy in the amount of $445,000, even though the Downey loan totaled only $405,000. *Id*. at 90. The final HUD-1 also showed that Valdez was charged a second time for a $325 appraisal of the property, that there had been a $500 payment to Primewest for "processing," and a payment of a $50 "email fee" to Commonwealth Land Title Company. *Id*. at ¶¶ 91-93. Primewest never

3

1  arranged for the escrow/impound account that Valdez had requested and never transferred title of
2  the Dogaway property to her son. *Id*. at ¶ 94.
3        Based upon these allegations, Valdez alleges the following claims: (1) violation of the
4  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (against Downey,
5  Primewest, and Kattaura); (2) breach of fiduciary duty (against Primewest, Khan and Kattaura);
6  (3) concealment (against Primewest, Kattaura, Khan, Romeo, and McGivern); (4) negligence
7  (against all Defendants); (5) negligent misrepresentation (against Primewest, Khan, Kattaura,
8  Romeo, and McGivern); (6) intentional misrepresentation (against Primewest, Khan, Kattaura,
9  Romeo, and McGivern); (7) fraud and Cal. Civ. Code § 3294 (against all Defendants); (8)
10 violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* (against all Defendants);
11 and (9) violation of Cal. Bus. & Prof. Code § 10240, *et seq*. (against Primewest, Kattaura, and
12 Khan).
13       Primewest, Khan, and Kattaura move to dismiss and for enlargement of time. Delacruz
14 and McGivern have filed a separate motion to dismiss.

## II. LEGAL STANDARD

17       A complaint may be dismissed for failure to state a claim upon which relief can be
18 granted for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a
19 cognizable legal theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); Robertson v. Dean
20 Witter Rynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of a motion to
21 dismiss, all allegations of material fact in the complaint are taken as true, and the Court must
22 construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395
23 U.S. 411, 421 (1969); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).
24       A complaint should not be dismissed "unless is appears beyond doubt the plaintiff can
25 prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at
26 754. Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot
27 be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).
28

4

Case No. C 06-2451-JF (HRL)
ORDER (1) GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF PRIMEWEST, KAHN, AND KATTUARA; AND (2) DENYING MOTION TO DISMISS OF ROMEO AND MCGIVERN
(JFEX2)

When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III.  DISCUSSION

**A.   MOTION TO DISMISS THE THIRD, FIFTH, SIXTH, AND SEVENTH CLAIMS BECAUSE THEY ARE DUPLICATIVE AND FAIL TO PLEAD FRAUD WITH SPECIFICITY**

**1.   Concealment, Negligent Misrepresentation, Intentional Misrepresentation, and Fraud**

Defendants challenge Valdez's third, fifth, sixth, and seventh claims for concealment, negligent misrepresentation, intentional misrepresentation, and fraud, respectively, on the ground that Valdez may assert only one claim for fraud rather than four separate claims based on separate theories.  Valdez's third, fifth, and sixth claims are alleged against Defendants Primewest, Khan, Kattaura, Romeo, and McGivern.  The third claim for concealment alleges that these defendants "concealed material facts from Ms. Valdez."  FAC ¶ 138.  As stated in the FAC, the concealed facts include, but are not limited to the following:

   1. The true fees charged to Ms. Valdez, directly and indirectly, in connection with the
      refinance of her existing mortgage loan;
   2. The true character of the fees charged to Ms. Valdez;
   3. The true potential effect that the undisclosed charges and fees would have on Ms.
      Valdez's monthly payment obligation;
   4. The true approximate monthly mortgage obligation;
   5. That the loan product provided to Ms. Valdez carried a higher than necessary
      interest rate, simply for the purpose of increasing Defendants' own profits.

*Id.* Valdez's fifth claim for negligent misrepresentation and sixth claim for intentional misrepresentation both allege that Defendants "made several false representations of material fact to Ms. Valdez in connection with the refinance transaction." *Id.* at ¶¶ 147, 153.  Valdez alleges that Defendants "knew or . . . should have known, that the representations were false when they made them . . . [and] knew or . . . should have known, that they were concealing material facts from Ms. Valdez regarding the refinance transaction." *Id.* at ¶¶ 148, 154.  In her sixth claim for intentional misrepresentation, Valdez also alleges that Defendants intended that

5

1  she rely on the misrepresentations. *Id.* at ¶ 156.  Finally, Valdez's seventh claim for fraud against
2  all Defendants alleges that:

> Defendants induced Ms. Valdez to refinance her existing loan . . . by orally misrepresenting to her, and concealing from her, the nature of the proposed loan agreement (i.e., a refinance for a second home), the benefits Ms. Valdez would obtain from refinancing (i.e., transfer of title to her son, and an impound account for property taxes), and the financial consequences of refinancing her existing mortgage (i.e., that Ms, Valdez would incur a prepayment penalty on her existing mortgage).
> Defendants allegedly knew the misrepresentations were false, and made the misrepresentations "with the specific intent of fraudulently inducing [Valdez] to enter into a loan agreement . . . ."

*Id.* at ¶¶ 161-63.  According to Defendants, although Valdez has alleged multiple theories of fraud, she has pled the violation of only one primary right and therefore may assert only one claim.

**a.  Multiple Theories Supporting a Single Claim**

Defendants contend that Valdez's claims for concealment, intentional misrepresentation, and negligent misrepresentation are duplicative of her claim for fraud.  Valdez cites Cal. Civ. Code §§ 1572 and 1710 in support of her argument that each claim is cognizable under California law.  Cal. Civ. Code § 1572 provides the definition for "actual fraud," and Cal. Civ. Code § 1710, separately defines deceit as:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
> 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,
> 4. A promise, made without any intention of performing it.

Valdez argues that § 1710 codifies separate claims for intentional misrepresentation, negligent misrepresentation, concealment, and fraud, respectively.  Valdez also cites the civil jury instructions approved by the Judicial Council which recognize separate claims for intentional misrepresentation, concealment, and negligent misrepresentation.  *See* 1 Judicial Council of Cal. Civ. Jury Instructions 1900, 1901, 1903 (Fall 2006 Ed.).

Defendants argue that although California official jury instructions demonstrate four ways to prove deceit, as outlined in § 1710, there may be only one claim for relief.  In support of

6

this position, Defendants cite *Conger v. White* 69 Cal.App.2d 28, 41 (1945), which states that, "[i]n an action for damages for fraud, a complaint which alleges a series of fraudulent acts committed in the execution of an entire scheme . . . states a single cause of action." *Conger*, however, is inapposite. In that case, the appellant challenged the pleading of a single cause of action for fraud on the theory that plaintiff should have pled three separate causes of action. *Id.* The court rejected this argument because plaintiff claimed a conspiracy to defraud, and each action constituted a part of the scheme. *Id.* "The three transactions were interwoven so that it would have been impossible for plaintiff to prove fraud in the second or third purchases without first proving fraud in the first one." *Id.* Here, Valdez is asserting alternative theories of liability based upon the same allegedly fraudulent conduct. Nothing in *Conger* suggests that the assertion of alternative theories is inappropriate. Alternative theories of fraud commonly are pled in federal district court. Accordingly, Defendants' motion to dismiss on this ground will be denied.

**b.     Primary Rights Theory**

Defendants also place significant emphasis on the case of *Stoner v. Williams*, 46 Cal.App.4th 986 (1996), and mount a challenge to the FAC based on the "primary rights" theory discussed in that case. *See id.* at 1003-04. Under the primary rights theory, "the 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. Even where there are multiple legal theories upon which recovery might be predicated, one injury gives right to only one claim for relief." *Id.* at 1003 (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* 5 Cal.4th 854, 860 (1993)). In *Stoner,* the plaintiff brought an action for fraud based on various acts of misrepresentation, and the issue raised was whether the trial court correctly instructed the jury that it did not need to agree on which act constituted fraud, as long as all agreed that the elements of fraud were proven. Defendants focus on the fact that the jury instructions introduced multiple theories of fraud for intentional misrepresentation, intentional concealment, and negligent misrepresentation. *See id.* at 995. However, the court merely noted that, "[t]he existence of multiple legal theories or acts on which that particular

7

fraud could be proved would not *necessarily* result in multiple causes of action." *Id.* at 1002 (emphasis added). Although it observed that multiple theories of fraud might not necessarily support separate claims for relief, the court did not foreclose that possibility. In fact, the Court concluded that it was not error for the jury to find fraud on multiple theories even though "[p]ursuant to the primary rights theory, Stoner suffered only one injury and she had only a single cause of action for personal injury because of fraud." *Id.* at 1004. It held that "[t]he existence of multiple legal theories (e.g., intentional misrepresentation, concealment or negligent misrepresentation) or multiple, alternative fraudulent acts . . . does not alter this conclusion." *Id.* Accordingly, Valdez's third, fifth, sixth, and seventh claims are not duplicative, and the motion to dismiss them on this basis will be denied.

**2. Pleading Fraud with Particularity**

Defendants challenge Valdez's third, fifth, sixth, and seventh causes of action for concealment, negligent misrepresentation, intentional misrepresentation, and fraud, respectively, on the ground that Valdez has failed to allege facts sufficient to state a claim for fraud against Khan, Kattaura, and Romeo, individually. As against Khan and Kattaura, Defendants argue that Valdez:

> utterly fails to state with particularity how Khan and Kattaura, individually, participated in the fraud, concealment, or misrepresentations or authorized and directed that they be done. The only allegations against Khan and Kattaura individually are mere conclusory allegations that Khan and Kattaura somehow controlled or directed McGivern and Romeo under an unsubstantiated theory of agency.

Primewest, Khan, Kattaura Mot. at 7. As against Romeo, Defendants contend that Valdez:

> utterly fails to state with particularity how [Romeo], individually, participated in the fraud, concealment, or misrepresentation or authorized and directed that they be done. [Valdez] does not specifically show how [Romeo] had any reason to know what happened concerning the loan following the initial phone calls. They are only conclusory against [Romeo].

Romeo, McGivern Mot. at 7.

An important purpose of pleading in the federal courts is to give the defendant fair notice of the plaintiff's claim, and the facts upon which the claim rests. *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547 (1994), overruled on other grounds, *Marksman*

8

*Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 996); *see also Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987). However, when a plaintiff asserts a claim for fraud, the complaint must do more than merely provide notice. *See In re Glenfed*, 42 F.3d at 1547. Federal Rule of Civil Procedure 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As applied by the Ninth Circuit, pleading is sufficient under Rule 9(b) if the plaintiff provides "statements of the time, place and nature of the alleged fraudulent activities . . . [M]ere conclusory allegations of fraud are insufficient." *Moore v. Kaypart Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citing *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987)). "To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* at 1548. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vees v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 66, 627 (9th Cir. 1997)). It "is not fatal to [a] complaint that it does not describe in detail a single specific transaction (i.e. shipment) in which [Defendant] transgressed . . . , by customer, amount, and precise method. Comparable precedent does not require [such] detail." *Cooper*, 137 F.3d at 627.

**a.    Khan and Kattaura**

Valdez alleges claims of fraud against Khan on theories of direct liability, for Khan's own acts, and vicarious liability, for the acts of his agents. Valdez alleges claims of fraud against Kattaura based on vicarious liability for the acts of his agents.

**i.    Direct Liability of Khan**

With respect to Khan, Valdez alleges the following facts: after Valdez discovered the fraudulent information in her loan papers, she contacted World Savings Bank and McGivern and attempted to rewind the loan. FAC ¶ 63-76. "Ms. Valdez thereafter made further attempts to

9

contact Primewest and eventually spoke to defendant Khan over the telephone." *Id.* at ¶ 77. "Ms. Valdez explained her experience to defendant Khan who informed her that he would 'look into it.'" *Id.* at ¶ 78. "Downey, Primewest, Khan, Kattaura, and McGivern failed to address Ms. Valdez' concerns and did not allow her to cancel the loan and did not take the necessary steps to rewind the loan, including the submission of cancellation instruction." *Id.* at ¶ 79. Valdez also alleges that after McGivern obtained her loan information, he "provided such information to defendants Khan and Primewest who completed Ms. Valdez's loan application" which was "falsified and contained many false or misleading misrepresentation concerning, *inter alia*, Ms. Valdez's assets, income and employment history, . . ." *Id.* at ¶ 55, 83.  Defendants argue that Valdez does not plead fraud with sufficient particularity against Khan because she fails to state all of the following: (1) the fraudulent statement, (2) the time and place of the fraudulent statement, (3) the person or persons making the fraudulent statement, (3) the method of communicating the fraudulent statement, (4) an explanation of why the statement was misleading, and (5) the injury.

**ii.    Vicarious Liability of Khan and Kattaura**

Valdez also alleges that Khan and Kattaura are vicariously liable for the fraudulent acts of their agents.  Defendants challenge 1) whether Khan and Kattaura ever can be vicariously liable for the fraudulent acts of their agents, and 2) whether Valdez has plead facts with sufficient particularity under Rule 9(b) to prove that Khan and Kattauera authorized or directed fraudulent acts by their agents.

According to the facts pled in the FAC, Kattaura was the Vice President of Primewest and a licensed real estate broker by the California Department of Real Estate ("DRE").  FAC ¶ 19, 20.  Kahn was the President of Primewest, was a licensed real estate salesperson by the DRE, and operated under Kattaura's broker's license. FAC ¶ 21.  Both Romeo and McGivern were non-licensed employees of Primewest. FAC ¶ 22, 23.

Defendants argue that Khan and Kattaura cannot be held vicariously liable for the acts of their agents because they are officers of Primewest. "[D]irectors or officers of a corporation do

10

not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done." *United States Liability Insurance Company v. Haidinger-Haiyes, Inc.*, 1 Cal.3d 586, 595 (1970) (citing 3 Witkin, Summary of Cal. Law (7th ed. 1960) § 48(c), pp. 2342-43))   However, *Haidinger-Haiyes* also observes that officers "may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation." *Id.*   Accordingly, as a matter of law, Khan and Kattaura can be held vicariously liable for their agents' fraudulent misrepresentation committed on behalf of Primewest.

Valdez argues further that Khan and Kattaura are vicariously liable not only as officers of Primewest but also as licensed real estate brokers acting in the scope of their employment relationship. Defendants rely upon *Holley v. Crank*, 400 F.3d 667, 671 (9th Cir. 2004) for the proposition that "liability in the typical employment relationship runs between the corporation and the salesperson and between the corporation and the supervisor, but not between the salesperson and the supervisor." *Id.*  Importantly, *Holley* states an exception to that general rule. "California law makes the designated real estate broker of a real estate corporation personally responsible for the supervision of the corporation's salespersons." *Id.*

As stated in the FAC, Kattaura is a licensed real estate broker, but Khan is a licensed real estate salesperson. Kattaura, therefore, can be held vicariously liable for the acts of Romeo and McGivern, under the exception noted in *Holley*. Kahn, however, as a licensed salesperson and not a broker, does not fall within the exception. Any vicarious liability assigned to Kahn must instead arise from his status as an officer, the fact that the fraudulent acts were committed on behalf of the corporation, and the agency theory. *See Haidinger-Haiyes,* Cal.3d at 595 (citing 3 Witkin, § 48(c), pp. 2342-43).

Defendants challenge the application of the *Holley* exception in this case, arguing that the corporation, Primewest, and not the individual officer, Kattaura, is vicariously liable as the broker under Cal. Bus. & Prof. Code and *Walters v. Marler*, 83 Cal.App.3d 1 (1978). According to the FAC, Primewest is a licensed real estate broker under the DRE and Kattaura

1  was Primewest's only designated officer licensed as a broker by the DRE. FAC ¶ 18, 20.
2  Defendants cite *Walters* for the proposition that, "[a]ny action by the qualifying broker . . . must
3  be regarded as an action by the corporation and not by the broker as an individual." *Walters,* 83
4  Cal.App.3d at 35.  In *Walters*, Proulx was the qualifying officer for Lampiter, and Leseman was
5  the salesman under the supervision of Proulx. At issue was Proulx's liability for Leseman's
6  negligent misrepresentations made to the buyer, Walters. In discussing the agency relationship,
7  the court stated that, "as an agent of the corporation, Proulx owed a duty to Lampliter to
8  supervise the work of Lampliter employees. . . However, Proulx owed no duty to Walters to
9  supervise Leseman's work; he therefore may not be held personally liable to Walters for
10 Leseman's negligent misrepresentations." *Id.*  Defendants contend that in this case, Primewest
11 may be vicariously liable for the acts of its agents, but that Kattaura may not be held liable.

12       Even assuming that the Khan and Kattaura can be held vicariously liable for acts
13 committed by their agents, Defendants argue that Valdez does not plead facts with sufficient
14 particularity under Rule 9(b) to show that Khan and Kattaura authorized or directed fraudulent
15 acts by their agents. Valdez alleges in her FAC that she "is informed and believes that at all
16 relevant times alleged herein Primewest and Kattaura, as licensed mortgage brokers, controlled
17 and directed the manner in which Khan, as a Primewest officer and licensed sales agent
18 operating under Kattaura's broker license, solicited, initiated, negotiated, processed and finalized
19 the Loan Agreement." FAC ¶ 35.  Valdez also alleges that she "is informed and believes that at
20 all relevant times herein Primewest, Kattaura and Khan, as licensed mortgage brokers and
21 broker's agent and officers of Primewest, controlled and directed the manner in which Romeo
22 and McGivern, and other employees of Primewest, solicited, initiated, negotiated, processed and
23 finalized the Loan Agreement." *Id.* at  ¶ 36.

24       The Court agrees with Defendants that Valdez's fraud claims against Khan for direct
25 liability are not sufficiently specific to meet the heightened pleading requirement of Rule 9(b).
26 The allegations against Khan are primarily conclusory. The only statement alleged to have been
27 made by Khan is that he would "look into it." To satisfy Rule 9(b), more detail as to Khan's
28

specific false statements or statements condoning concealment or misrepresentation must be alleged. The Court also concludes that Khan cannot be held vicariously liable for the acts of his agents. Khan is not a licensed broker, and *Holley* is clear that vicarious liability in a real estate employment relationship in California exists between the broker and salesperson. At the hearing, counsel for Valdez argued that Khan is a real estate broker as defined by Cal. Bus. & Prof. Code § 10131. However, Cal. Bus. & Prof. Code § 10159.2 states expressly that:

> [t]he officer designated by a corporate broker licensee pursuant to Section 10211 shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to secure full compliance with the provisions of this division, including the supervision of salespersons licensed to the corporation in the performance of acts for which a real estate license is required.

As alleged in the FAC, Kattaura, and not Khan, was Primewest's only designated officer. FAC ¶ 20.

Valdez's allegations of vicarious liability against Kattaura under *Holley* are sufficient because Kattaura is a licensed broker. Defendants in essence argue that *Holley* should be limited to its facts, which involved a broker who exercised pervasive control over his corporation. However, *Holley* holds more broadly that a broker is liable for the acts of the salesperson, regardless of the broker's corporate position:

> The statutory provisions regulating the real estate profession . . . places a direct, personal responsibility on the designated officer/broker of a real estate corporation to supervise the salespersons to assure compliance with the state and federal laws. This personal obligation is independent from that of the normal responsibilities of a corporate officer or of the corporation itself. This is a direct personal responsibility on the part of the officer/broker that is subject to disciplinary action affecting that officer/broker's personal broker's license.

*Holley,* 400 F.3d at 673.

Accordingly, Valdez's third, fifth, sixth, and seventh claims will be dismissed with respect to Khan without leave to amend, and without prejudice. Defendants' motion will be denied as to Valdez' fraud claims against Kattaura.

**c.      Romeo**

Defendants challenge Valdez's claims of concealment, misrepresentation, and fraud against Romeo on the ground that the FAC lacks specificity as required by Rule 9(b). As to Romeo individually, Valdez pleads the following facts: Valdez received numerous, unsolicited

13

phone calls from Romeo, who said he was calling on behalf of Primewest.  FAC ¶ 40.  Romeo told her that "she would get the best possible loan rate" and promised that all her goals for her property would be accomplished.  *Id.* at ¶ 45-46.  Romeo went with McGivern and Carmina to Valdez's home to have her sign all of the loan documents.  *Id.* at  ¶ 59.  "Valdez was presented with a large stack of transactional documents and told that she needed to sign all of them . . . [She] was never afforded an opportunity to thoroughly examine all of the documents, including the completed loan application . . . she relied on the representations and expertise of the Defendants . . . ."  *Id.* at  ¶ 61.  "Valdez learned that her loan application was falsified and contained many false or misleading misrepresentation concerning, *inter alia*, Ms. Valdez's assets, income and employment history, . . ."  *Id.* at  ¶ 83.  Romeo concealed material facts from Valdez with regard to the total fees charged, the true character of the fees, her monthly payment obligation, and the true purpose of the higher interest rate, and Valdez alleged he did so with the intent to defraud.  *Id.* at  ¶ 138, 140.

　　　　The Court finds that as to Romeo the allegations of the FAC are sufficient to satisfy Rule 9(b).  Accordingly, Defendants' motion to dismiss the fraud claims against Romeo will be denied.

**B.     MOTION TO DISMISS FOURTH CLAIM FOR NEGLIGENCE AGAINST KAHN BECAUSE PLAINTIFF FAILED TO PLEAD A VIOLATION OF A DUTY OWED DIRECTLY TO PLAINTIFF.**

　　　　Valdez alleges a claim for negligence against all Defendants for breach of their duties of care in exercising reasonable care and skill in performing their mortgage and lending services by failing to:

> thoroughly explain the terms of the refinance transaction and Loan Agreement, ensure that Ms. Valdez understood the terms of the refinance transaction and Loan Agreement, disclose the total and true character of the fees that would be charged to Ms. Valdez, submit truthful financial information on the HUD-1 statement, and properly train and supervise all Primewest salespersons, agents, and employees.

Defendants argue that Khan cannot be held liable for any direct negligence because his only statement to Valdez was that he would "look into it."  FAC ¶ 78.  Defendants also contend that Khan cannot be held vicariously liable for negligent acts committed by Romeo or McGivern

because liability runs between a corporation and the salesperson, and not between the salesperson and the supervisor.

Although a claim based upon negligence does not require the heightened pleading necessary for a fraud claim, the Court agrees with Defendants that the allegations against Khan are insufficient to support a claim for negligence. As to Valdez's argument regarding vicarious liability, the Court again finds that since Khan is not a licensed broker, he cannot be held vicariously liable. Accordingly, the negligence claim against Kahn will be dismissed without leave to amend.

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion of Primewest, Khan, and Kattaura is GRANTED in part and DENIED in part, as set forth above.

IF IS FURTHER ORDERED that the motion of Romeo and McGivern is DENIED.

Defendants shall file their answer within thirty (30) days of the date of this Order.

DATED: 4/16/07

JEREMY FOGEL
United States District Judge

Copies of Order have been served upon the following persons:

Eric M. Alderete
ealderete@downeysavings.com, jessicavasquez@downeysavings.com

Joshua David Brysk
josh@jgschwartz.com, bella@jgschwartz.com

Alison Paige Buchanan
apb@hogefenton.com

Isela Castaneda
isela.castaneda@dlapiper.com, alison.mcquade@dlapiper.com

Rajiv Sajjan Dharnidharka
rajiv.dharnidharka@dlapiper.com, christina.wikner@dlapiper.com

Christine M. Humphries
chumphries@downeysavings.com, jessicavasquez@downeysavings.com

Michael D. McSweeney
mdm@hogefenton.com

Kim Pederson
kimp@lawfoundation.org

James G. Schwartz
jim@jgschwartz.com, bella@jgschwartz.com; roberta@jgschwartz.com

Stephanie Sidra Alexandre Stevens
stephanies@lawfoundation.org

Aaron Wainscoat
aaron.wainscoat@dlapiper.com, aaron.wainscoat@dlapiper.com; celestine.seals@dlapiper.com

Yakov M. Zolotorev
yakov.zolotorev@dlapiper.com, deborah.brown@dlapiper.com

Sean McGivern
755 E. Capitol Avenue, #J-212
Milpitas, CA 95035

Case No. C 06-2451-JF (HRL)
ORDER (1) GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF PRIMEWEST, KAHN, AND KATTUARA; AND (2) DENYING MOTION TO DISMISS OF ROMEO AND MCGIVERN
(JFEX2)