**E-Filed 10/3/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARLENE VALDEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DOWNEY SAVINGS AND LOAN, et al.,<br><br>　　　　　Defendants. | Case Number C 06-2541 JF (HRL)<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>[re: doc. no. 126] |

　　　Plaintiff Henry J. Valdez, substituted as plaintiff in the instant action following the death of his mother Arlene Valdez, seeks default judgment against Defendant Primewest Residential Loans, Inc. ("Primewest") and its owners, Defendants Habibullah M. Khan ("Khan") and Savindar K. Kattaura ("Kattaura") (collectively with Primewest, "Defendants"). Plaintiff's motion is unopposed.

　　　Plaintiff alleges that Defendants engaged in predatory lending practices in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. and the California

---

[1] This disposition is not designated for publication in the official reports.

Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiff also accuses Defendants of negligence and breach of fiduciary duty. Defendants are currently unrepresented by counsel, and have not appeared in this matter since May of 2007, when their previous counsel withdrew. The parties were involved in settlement discussions prior to Ms. Valdez's passing in July of 2007. After her death, however, Defendants ceased responding to communications from Plaintiff's counsel. The Court then issued an Order to Show Cause for Defendants to appear. Defendants still failed to appear, and Plaintiff subsequently moved for default judgment. Defendants have been served with Plaintiff's motion and supporting papers by mail.

For the reasons set forth below, the Court will enter default judgment and will award Plaintiff $39,927.91 in damages.

## I. FACTS

Ms. Valdez commenced this action on April 12, 2006. According to the first amended complaint ("FAC"), the relevant facts are as follows. Beginning in April 2004, Ms. Valdez started to receive unsolicited phone calls from an employee of Primewest, who eventually convinced Ms. Valdez to refinance her home. The Primewest employee told Ms. Valdez that the finance charges for this transaction would be approximately $3,000 to $4,000. The Primewest employee also assured Ms. Valdez that there would be no prepayment penalty on her current loan due to the refinance. Primewest proceeded with the transaction even though Ms. Valdez informed the Primewest employee that her monthly income was $1,500, which came from social security benefits and payments from a pension plan.

Several Primewest employees then met with Ms. Valdez at her home to close the transaction. At this meeting, Ms. Valdez was presented with a large stack of documents but she was not afforded an opportunity to examine them thoroughly. However, Ms. Valdez still signed

the loan documents, believing that Primewest and its employees were acting in her best interest and that the documents contained the terms previously promised to her.

Upon later review of the loan documents, Ms. Valdez discovered that her loan had included a $6,075 broker fee to Primewest and a $12,150 rebate paid to Defendant Primewest by the lender, former Defendant Downey Savings and Loan Association ("Downey").[2] In addition, Ms. Valdez had incurred a $7,011.91 prepayment penalty due to her previous loan. Ms. Valdez then contacted Primewest to request that the refinance loan be rescinded, but a Primewest employee informed her that it was too late to rescind the agreement. However, the employee told Ms. Valdez that she could recoup this prepayment penalty by referring more business to Primewest.

Ms. Valdez eventually discovered that her loan application, which listed Defendant Khan as the person who filled out the application, contained additional misrepresentations. These included (1) she had been self-employed for ten years at a business called "Valdez Sewing and Embroideries;" (2) she owned $1,125,018.62 in total assets, including two properties collectively valued at $999,000 and a Toyota Camry valued at $35,000; and (3) she earned a monthly income of $8,031. Furthermore, the $12,150 payment from Defendant Downey to Primewest was in fact a "yield spread premium," paid as a benefit for placing Ms. Valdez into loan with a higher interest rate. She also had been overcharged for her title insurance and appraisal fee, and had incurred miscellaneous and unnecessary processing charges.

---

[2] Claims against Defendant Downey were dismissed on October 22, 2007 pursuant to a settlement agreement.

3

## II. DISCUSSION

Upon default, the well-pleaded allegations in a complaint are taken as true. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). However, this rule applies only to liability, not alleged damages. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). This Court previously found that Plaintiff's FAC alleged sufficient facts against Defendants to survive a motion to dismiss. Furthermore, Defendants have not appeared to oppose the instant motion. Accordingly, the Court finds that default judgment as to liability is appropriate, and thus the only unresolved issue is the amount of damages to award.

### A. RESPA Violations

For violations of RESPA, a plaintiff may recover three times the amount of the settlement services paid by the borrower, plus costs and reasonable attorneys' fees. 12 U.S.C. § 2607(d)(2), (d)(5). RESPA also provides for joint and several liability. 12 U.S.C. § 2607(d)(2). The FAC alleges that by receiving a yield spread premium, Defendants Primewest and Kattaura (as the broker of record for Primewest) violated 12 U.S.C. § 2607(a), which prohibits the receipt of referral fees or kickback payments for the completion of a loan transaction. *See Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1005-06 (9th Cir. 2002). *Schuetz* provides that a yield spread premium violates § 2607(a) if the compensation is not reasonably related to the services provided. 292 F.3d at 1006.

In the instant case, Primewest and Kattaura received $6,075 in broker fees directly from Ms. Valdez, an amount that represents 1.5% of the total loan value. When the $12,150 yield spread premium is added to this amount, the total compensation to Defendants Primewest and Kattaura was $18,225, or roughly 4.5% of the value of Ms. Valdez's loan. Based on the allegations in the FAC, the Court finds that $18,225 is a disproportionate amount for Defendants

4

Case No. C 06-2541 JF (HRL)
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC1)

to have received, especially because they arguably performed no beneficial service for Ms. Valdez.

The FAC also alleges that several of the miscellaneous fees paid by Ms. Valdez violated § 2607(b), which provides that fees may be received only for "services actually performed." The Court finds that Defendants violated § 2607(b) when they charged Ms. Valdez $325 for an appraisal because such fee had already been paid by her son.

Accordingly, Plaintiff is entitled to three times the amount that Ms. Valdez paid in settlement charges ($6,922, which equals the $6,075 loan origination fee plus the appraisal fee and miscellaneous charges), for a total of $20,766.

### B.  Negligence and Breach of Fiduciary Duty

The FAC alleges that Defendants Primewest, Kattaura and Khan were negligent and breached their fiduciary duties by misrepresenting whether Ms. Valdez would be subject to a prepayment penalty on her prior loan. The Court agrees. Defendants owed Ms. Valdez a duty of loyalty, and in particular Defendant Kattaura (as the designated broker) was "charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." *Barry v. Raskov*, 232 Cal. App. 3d 447, 455 (1991). As a direct result of Defendants' breach of their fiduciary duty, Ms. Valdez incurred economic harm in the form of a $7,011.91 prepayment penalty. Accordingly, Plaintiff is entitled to $7,011.91.

### C.  Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*

California law defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The scope of § 17200 is broad, and permits independent and cumulative actions to be brought even when "the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right

of action." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 565 (1998). Under California law, prevailing plaintiffs are entitled to restitution of money received due to an unfair business practice. *See* Cal. Bus. & Prof. Code § 17203.

The FAC alleges multiple acts of unfair competition by Defendants, including high pressure sales tactics and misrepresentations regarding loan fees. Plaintiff requests an award of $12,150 for these unfair business practices, an amount which equals the yield spread rebate paid to Defendants by Downey. The Court finds that $12,150 is an appropriate damage award in light of Defendants unfair business practices.

### III. ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for default judgment is GRANTED, and Plaintiff is awarded $39,927.21 in damages.

DATED: October 3, 2008

_____
JEREMY FOGEL
United States District Court

This Order has been served upon the following persons:

Joshua David Brysk     josh@jgschwartz.com, bella@jgschwartz.com

Isela Castaneda     isela.castaneda@dlapiper.com, alison.mcquade@dlapiper.com

Rajiv Sajjan Dharnidharka     rajiv.dharnidharka@dlapiper.com, trina.walker@dlapiper.com

Moses Diaz     mosesd@lawfoundation.org, moses@ucdavis-alumni.com

Kimberly Pederson     kimp@lawfoundation.org

James Gerald Schwartz     jim@jgschwartz.com, bella@jgschwartz.com, roberta@jgschwartz.com

Stephanie Sidra Alexandre Stevens     sastevens@justice.com

Aaron Wainscoat     aaron.wainscoat@dlapiper.com, celestine.seals@dlapiper.com

Yakov M. Zolotorev     yakov.zolotorev@dlapiper.com, deborah.brown@dlapiper.com

Case No. C 06-2541 JF (HRL)
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC1)